COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Coleman and Elder
Argued at Salem, Virginia


JOHN MASON ST. CLAIR
                                MEMORANDUM OPINION[*] BY v.
     Record No. 1649-97-3        JUDGE LARRY G. ELDER
                                    NOVEMBER 24, 1998
CITY OF LYNCHBURG


            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                     Mosby G. Perrow, III, Judge

          Leslie E. Allen, III (Harris, Allen & Yoder,
          P.C., on brief), for appellant.

          Thomas M. McKenna, Assistant Commonwealth's
          Attorney, for appellee.



     John Mason St. Clair (appellant) appeals from his bench

trial conviction for driving under the influence of alcohol,

second offense, in violation of Lynchburg Ordinance 25-162.[1]

On appeal, he contends first that the trial court erred in

admitting the results of his breath test because the City failed

to prove substantial compliance with statutory requirements for

administering the breath test; the test was conducted less than

twenty minutes after appellant ingested two prescription

nitroglycerin tablets, and the City failed to prove that the

nitroglycerin did not contaminate the breath sample and skew the

breathalyzer result.  Second, he contends that the City deprived

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

[1]This ordinance tracks the language of Virginia Code
§ 18.2-266.

him of a reliable test which may have proven his innocence and that, in the absence of such a test, the trial court erred in failing to dismiss the prosecution. For the reasons that follow, we reject appellant's contentions and affirm his conviction.

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" James v. Commonwealth, 18 Va. App. 746, 753, 446 S.E.2d 900, 904 (1994) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988) (citation omitted)). Ordinarily,

> [t]he measure of the burden of proof with respect to factual questions underlying the admissibility of evidence is proof by a preponderance of the evidence. . . . In determining whether the Commonwealth has met its burden, the trial court, acting as a fact finder, must evaluate the credibility of the witnesses, resolve the conflicts in their testimony and weigh the evidence as a whole. Its factual finding "is to be given the same weight by the appellate court as is accorded the finding of fact by a jury."

Albert v. Commonwealth, 2 Va. App. 734, 738, 347 S.E.2d 534, 536 (1986) (quoting Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 296-97 (1975) (citations and footnote omitted)).

Code § 18.2-268.2 provides, in relevant part, that "[a]ny person . . . arrested for a violation of § 18.2-266(i) or (ii) . . . or of a similar ordinance shall submit to a breath test. If the breath test is unavailable or the person is physically unable to submit to the breath test, a blood test shall be given." Under Code § 18.2-268.9, "[t]o be capable of being

- 2 -

considered valid as evidence in a prosecution under § 18.2-266

. . . or a similar ordinance, chemical analysis of a person's

breath shall be performed . . . in accordance with methods

approved by the Department of Criminal Justice Services, Division

of Forensic Science."  The code also provides, however, that

> [t]he steps set forth in §§ 18.2-268.2
> through 18.2-268.9 relating to taking,
> handling, identifying and disposing of blood
> or breath samples are procedural and not
> substantive.  Substantial compliance shall be
> sufficient.  Failure to comply with any steps
> or portions thereof . . . shall not of itself
> be grounds for finding the defendant not
> guilty, but shall go to the weight of the
> evidence and shall be considered with all the
> evidence in the case; however, the defendant
> shall have the right to introduce evidence on
> his own behalf to show noncompliance with the
> aforesaid procedures or any part thereof, and
> that as a result his rights were prejudiced.

Code § 18.2-268.11.  The Commonwealth bears the burden of proving

substantial compliance with the statutes' requirements.  See

Snider v. Commonwealth, 26 Va. App. 729, 732, 496 S.E.2d 665, 666

(1998).

The trial court concluded under these standards that Officer

King's administration of the breathalyzer test less than twenty

minutes after appellant ingested two sublingual nitroglycerin

tablets constituted "a violation of the procedures outlined by

the statute."  However, it also concluded that administration of

the test substantially complied with the statute and

corresponding regulations.  We cannot hold that it erred in so

ruling.

In evaluating whether the test as administered substantially complied with the governing regulations, the trial court was entitled to consider testimony before it regarding the impact of the procedures followed on the reliability of the outcome.  See Hudson v. Commonwealth, 21 Va. App. 184, 186, 462 S.E.2d 913, 914 (1995) (reversing conviction because Commonwealth failed to present any evidence permitting finding of substantial compliance).  Here, the Commonwealth offered testimony from Peter Marone, the Assistant Director of the Division of Forensic Science and the official responsible for overseeing breathalyzer test training programs and promulgating the regulations governing operation of the machine.  Marone testified that King's failure to comply strictly with the twenty-minute waiting period would result in a procedurally invalid test but "[t]echnically . . . probably [would] not" invalidate the test.  (Emphasis added). Dr. Valentour, the Chief Forensic Toxicologist for that same agency, the Division of Forensic Science, testified to his familiarity with the means of operation of the Breathalyzer 900A and the chemical properties of nitroglycerin.  Based on that knowledge, he testified definitively that "[t]he only way that there could be some reaction in the potassium dichromate of The Breathalyzer is if the Nitroglycerin is actually physically dropped into the solution" because "[i]t's not volatile in sufficient quantities to pass by way of the breath into the ampule [of the Breathalyzer] and cause a reaction."  Based on

- 4 -

this testimony, the trial court was entitled to conclude that the procedures Officer King employed in testing appellant's breath alcohol level substantially complied with the controlling statutes and regulations, thereby making the test results admissible into evidence under Code § 18.2-268.11 and permitting the trial court, as the trier of fact, to determine what weight to give the results after considering it in the context of all the evidence in the case.

Our holding in Hudson v. Commonwealth, 21 Va. App. 184, 462 S.E.2d 913 (1995), cited by appellant, does not require a different result. In Hudson, the record indicated that the defendant's arm was cleaned with "benadine" before his blood was drawn, whereas the statute required cleaning with any of three other named solutions, which did not include benadine. Because the Commonwealth presented "[n]o evidence . . . as to the chemical properties of benadine," we held that "nothing in the record support[ed] the argument that using 'benadine' substantially complie[d] with the statute." Id. at 186, 462 S.E.2d at 914 (emphasis added). In appellant's case, by contrast, the record contains the testimony of Dr. Valentour that appellant's ingestion of nitroglycerin during the twenty-minute waiting period before administration of the breathalyzer had no impact on the reliability of the test. Although the record also contains the contradictory testimony of Mr. McGerry, Dr. Valentour's testimony permitted the trial court to find

- 5 -

substantial compliance sufficient to permit admission of the breathalyzer results into evidence under Code § 18.2-268.11. That code section permitted appellant to introduce evidence that the noncompliance prejudiced his rights, which he did through the testimony of Mr. McGerry, and required the trial court to consider all the evidence in the case in determining whether the noncompliance established reasonable doubt regarding appellant's guilt.[2]

Appellant contends that the hypothetical the Commonwealth posed to Dr. Valentour was insufficient to permit a finding that appellant's ingestion of two nitroglycerin tablets during the waiting period did not skew the breathalyzer results. The Commonwealth asked Dr. Valentour whether he had "an opinion as to whether a sublingually taken nitroglycerin pill would be volatile enough to have an effect on a reading from a Smith & Wesson 900-A breathalyzer machine." (Emphases added). Dr. Valentour responded that he did have an opinion--"[t]hat there would be no effect." In light of the evidence that appellant actually took two nitroglycerin tablets during the twenty-minute waiting period, we agree that Dr. Valentour's response to this hypothetical, taken alone, would have been insufficient to prove substantial compliance. However, immediately preceding this hypothetical, Dr. Valentour testified unequivocally that the only

---

[2]Appellant challenges only the admissibility of the breath test and not the sufficiency of the evidence to support his conviction.

way sublingual nitroglycerin "could [cause a] reaction in the potassium dichromate of The Breathalyzer is if the Nitroglycerin is actually physically dropped into the solution."  In giving this testimony, he did not qualify his response by indicating that a variation in the quantity or dosage of sublingual nitroglycerin would be a factor.

Finally, we reject appellant's contention that Dr. Valentour's opinion was based on speculation because he had not conducted any experiments to support his conclusion that no significant quantities of nitroglycerin could be carried into the breathalyzer in appellant's breath.  Dr. Valentour, a Ph.D. in chemistry and an expert in toxicology, testified that his conclusions were based on his knowledge of the physical properties of nitroglycerin.  We cannot conclude that the absence of actual testing invalidated his opinion.  Interestingly, appellant's expert also provided no testimony that he had conducted any experiments on the subject and said that his opinion, too, was based on "the physical properties of the Nitroglycerin being soluble in the alcohol."

Appellant also contends that, pursuant to this Court's holding in Breeden v. Commonwealth, 15 Va. App. 148, 150, 421 S.E.2d 674, 675 (1992), he had "a right to receive the benefits of the test," which, if properly administered, could have proven his innocence.  The invalidity of the test due to violation of the twenty-minute waiting period and the Commonwealth's failure

- 7 -

to give him a blood test when the nitroglycerin rendered him "physically unable to submit to the breath test" deprived him of this right, he argues. Under the facts of this case, we hold that Breeden is inapplicable and that appellant was not "physically unable" to submit to the breath test within the meaning of Code § 18.2-268.2.

Breeden was decided under a predecessor statute, which permitted "[a]nyone arrested for driving under the influence of alcohol [to] 'elect to have either the blood or breath sample taken, but not both.'" Breeden, 15 Va. App. at 150, 421 S.E.2d at 675 (quoting former Code § 18.2-268(C)). Under current law, by contrast, an arrestee must "submit to a breath test" unless "the breath test is unavailable or the person is physically unable to submit to the breath test." Code § 18.2-268.2(B). Despite this change in the statute, Officer Trent testified that he gave appellant a choice as to which test he would take and that appellant chose the breath test. In addition, the breath test was available and was, in fact, administered. Furthermore, the evidence does not show that appellant was physically unable to submit to the breath test. Officer Trent testified that appellant did not have any physical problem blowing into the machine, and the trial court found "no evidence that [appellant] was ever physically unable" to take the test. Because any physical inability appellant had in submitting to the breath test was constructive only, we hold that his need to use nitroglycerin

for his heart condition during the twenty-minute waiting period did not meet the "physical inability" requirement necessitating use of a blood test.

For these reasons, we conclude that the trial court did not abuse its discretion in admitting the results of the breathalyzer test into evidence and did not err in refusing to dismiss the prosecution.  Therefore, we affirm appellant's conviction.

<u>Affirmed</u>.